J-A25037-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MAXINE ROSENKEIMER AS EXECUTRIX OF THE ESTATE OF ARTHUR W. ROSENKEIMER, III | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 4 WDA 2021 |
| A.O. SMITH CORPORATION, ET. AL. | : : | |

Appeal from the Order Entered December 1, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  G.D. No. 19-009749

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                **FILED: JANUARY 26, 2022**

Maxine Rosenkeimer ("Plaintiff"), the executrix of the estate of Arthur W. Rosenkeimer, III ("Decedent"), appeals from the December 1, 2020 order dismissing all claims and parties in this action in which Plaintiff seeks damages related to Decedent's alleged exposure to asbestos.  In this appeal, Plaintiff challenges the August 11, 2020 order of the trial court granting the summary judgment motion of Appellee Vanadium Enterprises Corporation ("Vanadium"); the trial court concluded that the record lacked sufficient evidence to support a finding that Vanadium was liable as a successor to

_____

* Retired Senior Judge assigned to the Superior Court.

Decedent's former employers, Schneider, Inc. and one of its subsidiaries, Pittsburgh Mechanical Systems, Inc. ("Pittsburgh Mechanical"). We affirm.[1]

Decedent worked for Schneider, Inc. and Pittsburgh Mechanical as a union steamfitter on various jobs between 1970 and 1980. Vanadium Motion for Summary Judgment Based on Lack of Successor Liability ("Motion"), Exhibit 4 (Decedent's affidavit and employment records). According to his complaint, Decedent was diagnosed with mesothelioma in March 2018. On July 11, 2019, he initiated this action against various entities who allegedly exposed him to asbestos. Vanadium was named as one of the defendants in this lawsuit, while Schneider, Inc. and Pittsburgh Mechanical were not. Decedent died on January 11, 2021. Plaintiff, Decedent's daughter and the executrix of his estate, filed an application to be substituted as a party in this appeal, which this Court granted. The caption has been amended appropriately. For ease of discussion, we will refer to Plaintiff as the party of interest with respect to all filings in the trial court and this Court.

_____

[1] This matter and ***Kelly Smith, Executrix of the Estate of Daniel R. Harrity, deceased v. A.O. Smith Corporation, et al.***, No. 3 WDA 2021, are two related appeals from orders of the Court of Common Pleas of Allegheny County granting summary judgment in favor of Vanadium based upon a lack of successor liability with respect to asbestos-exposure claims brought by former employees of Schneider, Inc. and Pittsburgh Mechanical. While the plaintiffs, decedents, and their exact dates of employment with Schneider, Inc. and Pittsburgh Mechanical differ in the two cases, the summary judgment motion, the trial court's orders and reasoning, and the appellate issues are identical in these two matters.

Decedent's employers, Schneider, Inc. and Pittsburgh Mechanical, were two of approximately 40 corporate entities founded by Frank Schneider that we refer to collectively in this memorandum as the "Schneider Companies." Over time, various Schneider Companies ceased operations or experienced financial difficulties, and the assets of the remaining four operational Schneider Companies were sold in 1990 to Vanadium. The question of Vanadium's potential successor liability for the obligations of the four Schneider Companies whose assets it purchased was the subject of a prior lawsuit brought by Continental Insurance Company ("Continental Insurance") in the trial court. This earlier litigation ultimately produced opinions both of this Court, ***Continental Insurance Co. v. Schneider, Inc.***, 810 A.2d 127, 130 (Pa. Super. 2002), and our Supreme Court, ***Continental Insurance Co. v. Schneider, Inc.***, 873 A.2d 1286 (Pa. 2005).[2] Plaintiff's principal argument on appeal is that our reversal of the summary judgment grant in favor of Vanadium in ***Continental I*** is binding precedent that requires us to also reverse the grant of summary judgment here.

In ***Continental II***, our Supreme Court explained the events that led to Vanadium's purchase of the assets of the four Schneider Companies as follows:

---

[2] In this memorandum, we refer to our 2002 opinion as "***Continental I***," our Supreme Court's 2005 opinion as "***Continental II***," and we refer to the earlier litigation generally as "***Continental***."

During the mid-to-late 1980s, the Schneider Companies fell upon severe financial difficulties, such that by 1989, they had accumulated $35 million in debt to their three secured creditors, Pittsburgh National Bank (now PNC Bank), Mellon Bank and Equitable Bank (now National City Bank) (collectively, the "Banks"), who held blanket security interests in virtually all of the assets of the companies. As a result, Schneider, in coordination with the Banks, began shutting down or selling off most of the Schneider Companies. By April of 1990, only four of the Schneider Companies were still conducting any business and after May of 1990, even those four were nothing more than empty shells.

873 A.2d at 1288 (footnote omitted).

The four Schneider Companies that were still operating in 1990 and whose assets were sold to Vanadium were Schneider Engineers, Schneider Services International, Inc. ("SSI"), Jones-Krall, Inc. ("Jones-Krall"), and Construction Rental and Supply ("CRS"). *Continental I*, 810 A.2d at 130. In early 1990, Schneider delivered all of the non-real estate assets of Schneider Engineers, SSI, Jones-Krall, and CRS to its secured creditors, the Banks. *Continental II*, 873 A.2d at 1288. The Banks sold the assets of these four companies to Vanadium for $15 million at a consensual private foreclosure sale, pursuant to Section 9–504 of the Uniform Commercial Code ("UCC").[3] *Id.* In the transaction, Vanadium served as a holding company for four of its subsidiaries which individually purchased the assets of Schneider Engineers, SSI, Jones-Krall, and CRS.[4] *Id.* at 1288 & n.3. Neither Vanadium nor its

---

[3] 13 Pa.C.S. § 9504.

[4] These four Vanadium subsidiaries—S.E. Technologies, Inc., Construction Rental and Supply, Inc., Jones Krall, Inc. and S.S.I. Services, Inc.—were given nearly identical names to the Schneider Companies whose assets were purchased. *Continental II*, 873 A.2d at 1288 & n.3.

subsidiaries assumed any of the obligations of the four Schneider Companies. ***Continental I***, 810 A.2d at 130.

The four Schneider Companies whose assets were purchased by Vanadium were involved in distinct lines of business: Schneider Engineers was an engineering design firm, SSI performed facility and property management services, Jones-Krall was an electrical contractor, and CRS was an equipment rental company. Motion, Exhibit 16 (Matthew Schneider Deposition), at 40-41, 117-18. These lines of business continued at the four Vanadium subsidiaries after the asset sale. ***Id.*** at 98. By contrast, Vanadium did not purchase any assets related to the plumbing and mechanical contracting work Decedent was engaged in at Schneider, Inc. and Pittsburgh Mechanical. ***Id.*** at 38, 115-18.

In addition to its operational role as a plumbing and mechanical contractor, Schneider, Inc. also was a holding company and parent of Jones-Krall and, through another subsidiary, SSI. Plaintiff's Response in Opposition to Vanadium's Motion for Summary Judgment Based on Lack of Successor Liability ("Response"), Exhibit D (Organization Chart of Schneider Companies); Motion, Exhibits 12-13 (Jones-Krall and SSI Asset Sale Agreements). However, Schneider, Inc.'s own assets were not sold to Vanadium, and the company had not dissolved as of the date of the summary judgment motion. Motion, Exhibit 16, at 135; ***id.***, Exhibit 15 (Pennsylvania Department of State Business Document Search Report).

Vanadium was formed by managers at the four Schneider Companies whose assets it purchased. Motion, Exhibit 16, at 31, 37, 55-62, 65-66. Neither of the shareholders of Schneider, Inc.—Frank Schneider and his brother, Edward Schneider—ever had an ownership interest in Vanadium or its subsidiaries. *Id.* at 69, 131, 133-34, 172. Frank Schneider did, however, later come to work for one of the Vanadium subsidiaries until his death in 2002. *Id.* at 25, 108-10. In addition, Frank's son, Matthew Schneider, borrowed $2.05 million from his parents at the time of the 1990 asset sale, and he invested the money in Vanadium through a company he formed, Capital Diverse Venture Corporation. *Id.* at 30-32, 68-69, 81, 106-107. At first, Matthew was a passive investor in Vanadium holding non-voting stock, but he ultimately became the president and chief executive officer and sole voting shareholder of Vanadium in 1995. *Id.* at 71, 84-85, 87. Matthew, however, had very limited work experience at only one of the Schneider Companies (CRS) prior to his investment in Vanadium and none at Schneider, Inc. or Pittsburgh Mechanical; furthermore, Matthew never worked in the plumbing and mechanical contracting business. *Id.* at 103-104, 123-24.

In the present matter, Vanadium filed a motion for summary judgment on February 28, 2020, in which it asserted that it lacked successor liability for Schneider, Inc. and Pittsburgh Mechanical. On August 11, 2020, after oral argument, the trial court entered an order granting summary judgment in favor of Vanadium and dismissing all claims against Vanadium. Plaintiff ultimately settled with or discontinued litigation against all remaining parties,

and on December 1, 2020, the trial court entered an order disposing of all outstanding claims and parties to the lawsuit. Plaintiff filed a timely notice of appeal, citing her objection to the earlier grant of summary judgment in favor of Vanadium.

On May 28, 2021, the trial court filed an opinion explaining its reasons for granting summary judgment.[5] In its opinion, the trial court concluded that the evidence of record showed that none of the elements of the *de facto* merger standard were met because (i) Frank Schneider and his brother Edward never held an ownership interest in Vanadium; (ii) the only continuity of management was that Frank Schneider was an employee for one of Vanadium's subsidiaries; (iii) Schneider, Inc. has not dissolved; and (iv) the liabilities of Schneider, Inc. and Pittsburgh Mechanical were not assumed by Vanadium or its subsidiaries. Trial Court Opinion, 5/28/21, at 8; ***see also Fizzano Brothers Concrete Products, Inc. v. XLN, Inc.***, 42 A.3d 951, 962 (Pa. 2012) (listing four prongs of *de facto* merger test). While recognizing that Matthew Schneider had borrowed funds from his father to invest in Vanadium, the court noted that the source of funds for an investment is not a factor in the *de facto* merger standard and further that Matthew had no interest in or relationship with Schneider, Inc. or Pittsburgh Mechanical. Trial Court Opinion, 5/28/21, at 8-9. The trial court further concluded that, while

---

[5] The trial court did not order Plaintiff to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

the Schneider Companies were related and had business dealings with each other, they were not a single entity, and in any event, inter-billing between the Schneider Companies shows that corporate formalities between the various entities were observed. *Id.* at 9.

The trial court additionally found that there was insufficient evidence that Vanadium was a "mere continuation" of Schneider, Inc. and Pittsburgh Mechanical because Vanadium was engaged in distinct lines of business as those two companies. *Id.* at 11-12. The court concluded that, although two of the four Schneider Companies that Vanadium purchased were Schneider, Inc. subsidiaries, none of Schneider, Inc.'s assets itself were sold to Vanadium, and Schneider, Inc. continues to exist. *Id.* The trial court found that the "mere continuation" argument "might be viable if [Decedent] had worked specifically for one of the four companies whose assets were purchased" by Vanadium, but there was no genuine issue of material fact as to whether Vanadium was a continuation of the plumbing and mechanical contracting business of Schneider, Inc. or Pittsburgh Mechanical. *Id.* at 11.

Plaintiff presents the following issue for our review:

Whether the trial court erred when it determined that there was no genuine issue as to any material fact in relation to whether Vanadium [] was the corporate successor to Schneider, Inc. and that Vanadium [] was entitled to a judgment as a matter of law in relation to Plaintiff['s] claims against it.

Plaintiff's Brief at 4. Plaintiff focuses on two primary arguments in this appeal. First, Plaintiff argues that the trial court and this Court are bound by our

holding in **Continental I** that there was a genuine issue of material fact as to whether Vanadium had successor liability based upon its purchase of assets of four of the Schneider Companies. In addition, Plaintiff argues that the trial court erred when it refused to consider the deposition taken of Frank Schneider during the **Continental** litigation prior to his death in 2002.

Our review of the trial court's grant of summary judgment is guided by the following considerations. "[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." **In re Risperdal Litigation**, 223 A.3d 633, 639 (Pa. 2019) (citation omitted). Under our Rules of Civil Procedure, "a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury." **Cigna Corp. v. Executive Risk Indemnity, Inc.**, 111 A.3d 204, 210-11 (Pa. Super. 2015) (citation omitted); **see also** Pa.R.Civ.P. 1035.2.

"When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party." **Maas v. UPMC Presbyterian Shadyside**, 234 A.3d 427, 436 (Pa. 2020). Thus, the trial court may only grant summary judgment "where the right to such

judgment is clear and free from all doubt." ***Risperdal Litigation***, 223 A.3d at 639 (citation omitted).

> On appellate review, . . . an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the [trial court].

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted).

In Pennsylvania, it is a "general principle of corporation law that a purchaser of a corporation's assets does not, for such reason alone, assume the debts of the selling corporation, unlike a purchaser of the corporation's stock." ***Fizzano Brothers***, 42 A.3d at 954. However, exceptions to this general rule against successor liability have been recognized where:

> (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or [a *de facto*] merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation.

***Id.*** at 954 n.2 (quoting ***Continental II***, 873 A.2d at 129).

Of the five exceptions to the general rule against successor liability, only the "*de facto* merger" and "mere continuation" exceptions are at issue here.[6] With respect to the "*de facto* merger" exception,

> For a *de facto* merger to occur, there must be continuity of the successor and predecessor corporation as evidenced by (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor, and (4) a continuity of management, personnel, physical location, aspects, and general business operation.

*Fizzano Brothers*, 42 A.3d at 962 (citation omitted). "[T]he elements of the *de facto* merger are not a mechanically-applied checklist, but a map to guide a reviewing court to a determination that, under the facts established, for all intents and purposes, a merger has or has not occurred between two or more corporations, although not accomplished under the statutory procedure." *Id.* at 969.

---

[6] As Vanadium points out in its brief, in 1988, the General Assembly enacted Section 1904 of the Business Corporation Law, which "abolished" the "doctrine of *de facto* mergers, consolidations and other fundamental transactions." *See* 15 Pa.C.S. § 1904. However, no Pennsylvania state court has ever interpreted this statute, let alone found that the statute abolishes the *de facto* merger or mere continuation exceptions to the general rule against successor liability. Indeed, as recently as 2012, our Supreme Court in *Fizzano Brothers* recognized the continued existence of the *de facto* merger and mere continuation exceptions. In light of our affirmance of the trial court's grant of summary judgment here, we need not address what effect, if any, Section 1904 has on the successor liability exceptions.

The "mere continuation" exception to the general rule against successor liability is often treated "identically" to and is "difficult to distinguish" from the *de facto* merger exception. *Id.* at 963 n.13 (quoting **Commonwealth v. Lavelle**, 555 A.2d 218, 227 (Pa. Super. 1989) (*en banc*)). We have stated that "[i]n a [mere] continuation, a new corporation is formed to acquire the assets of an extant corporation, which then ceases to exist." **Lavelle**, 555 A.2d at 227 (citation omitted). "There is in effect but one corporation which merely changes its form and ordinarily ceases to exist upon the creation of the new corporation which is its successor." *Id.* (citation omitted). "The primary elements of the continuation exception are identity of the officers, directors, or shareholders, and the existence of a single corporation following the transfer." **Continental I**, 810 A.2d at 134-35.

Plaintiff first argues that the trial court erred in ignoring this Court's determination in **Continental I** that there was a genuine issue of material fact whether Vanadium was liable for the obligations of the Schneider Companies under a successor liability theory. Plaintiff contends that the only operative difference between this case and **Continental** is that Continental Insurance was seeking relief from Vanadium and its four subsidiaries, whereas here Plaintiff is seeking to impose liability solely on Vanadium. Plaintiff argues that this Court's prior conclusion that there remained unresolved issues of fact as to whether Vanadium was liable under the *de facto* merger or mere continuation exceptions remains good law and is controlling in the present litigation. Furthermore, Plaintiff asserts that the trial court's attempt to

distinguish ***Continental I*** on the basis that Schneider, Inc. was dismissed from the case was unavailing as Schneider, Inc. is not a party to the present matter either and the pertinent issue in both matters is the same: whether Vanadium is the corporate successor to the Schneider Companies.

The ***Continental*** case arose when Continental Insurance, the general liability, automobile, and workers' compensation insurance carrier for the Schneider Companies prior to the asset sale, brought suit to recover $12 million in premiums that it claimed had never been paid. ***Continental I***, 810 A.2d at 129-30. Continental Insurance named Vanadium and its four subsidiaries as parties to the suit, alleging that they were liable as successors to Schneider Engineers, SSI, Jones-Krall, and CRS. ***Id.*** at 129-30. The trial court entered summary judgment in favor of Vanadium concluding that the doctrine of successor liability should not operate to defeat the public policy favoring the interests of secured creditors—the Banks that arranged the foreclosure sale to Vanadium—over that of a general creditor—Continental Insurance. ***Id.*** Subsequent to the trial court's ruling, judgment was entered by consent against all the remaining Schneider defendants, including Schneider, Inc., and the only remaining defendants in the case were Vanadium and its four subsidiaries. ***Id.*** at 129 & n.1.

This Court held on appeal that a secured creditor's disposition of a debtor company's assets under Section 9-504 of the UCC[7] does not preclude a general creditor from later seeking recovery from the purchaser of the assets under the successor liability doctrine. *Id.* at 132-33. We then proceeded to hold that the trial court erred in granting summary judgment on the successor liability issue, concluding that there remained genuine issues of material fact as to whether Vanadium was the successor of the four Schneider Companies it purchased. *Id.* at 135-36. In particular, this Court noted that there was a genuine dispute regarding the continuity of ownership and control of Schneider Engineers, SSI, Jones-Krall, and CRS and whether the Vanadium companies served the same clients, had the same employees, and occupied the same offices as the former Schneider Companies. *Id.* at 135.

Our Supreme Court granted allocatur on the issue of whether a successor liability claim is viable following a sale of the debtor's assets pursuant to Section 9-504. *Continental II*, 873 A.2d at 1287. The Supreme Court affirmed this Court's conclusion that "a UCC foreclosure sale does not extinguish potential successor liability claims." *Id.* at 1292-94. The Supreme Court noted that Vanadium requested that it consider whether Continental Insurance had raised a genuine issue of material fact as to successor liability,

---

[7] Section 9-504 of the UCC was amended in 2001 and the relevant provisions were re-enacted in substantial part at Sections 9-610 and 9-611 of the UCC. *See* 13 Pa.C.S. §§ 9610, 9611; *Continental I*, 810 A.2d at 131 n.2.

but the Court did not reach the summary judgment ruling as allocatur was not granted on the issue. *Id.* at 1294 n.11.

Here, the trial court concluded that the summary judgment ruling of ***Continental I*** is inapplicable to the present case because Decedent's employers, Schneider, Inc. and Pittsburgh Mechanical, were not parties to the ***Continental*** matter at the time of the appeal to this Court and therefore the issues and arguments pertaining to those two entities were not raised. Trial Court Opinion, 5/28/21, at 5. The trial court further observed that the ultimate question of whether Vanadium and its subsidiaries had successor liability in the ***Continental*** litigation was not resolved as the case was settled prior to the trial court's resolution of the issue.[8] *Id.* "Most importantly," the trial court stated, ***Continental I*** is not binding in this matter because "for purposes of summary judgment each case must be decided based on the record in that particular case." *Id.*

Upon review, we agree with the trial court that the determination in ***Continental I*** that there was a triable issue of fact as to successor liability does not dictate the resolution of the summary judgment motion in the present matter. Both this Court and the trial court are bound by "existing

_____

[8] A review of the docket in the ***Continental*** matter reveals that the case was settled in 2006 shortly after the matter was remanded to the trial court. *See* https://dcr.alleghenycounty.us/Civil/View/PublicSearchByCaseNumber.aspx? CasID=GD-92-009392 (last visited December 17, 2021); *see also **Deyarmin v. Consolidated Rail Corp.***, 931 A.2d 1, 5 n.6 (Pa. Super. 2007) (we may take judicial notice of the docket of the courts of this Commonwealth).

[Superior Court] precedent under the doctrine of *stare decisis*." **Fiedler v. Spencer**, 231 A.3d 831, 838 (Pa. Super. 2020) (citation omitted); **see also Sunbeam Corp. v. Liberty Mutual Insurance Co.**, 781 A.2d 1189, 1194 (Pa. 2001).

> The doctrine of *stare decisis* maintains that for purposes of certainty and stability in the law, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different. In this formulation the terms "conclusion" and "in the law" are particularly meaningful because *stare decisis* relates primarily to rules or pronouncements of law.

**In re Angeles Roca First Judicial District Philadelphia County**, 173 A.3d 1176, 1187 (Pa. 2017) (internal citations and some quotation marks omitted); **see also** 20 Am. Jur. 2d Courts § 129 ("For a court to apply a precedent as *stare decisis*, there must have been a judicial opinion on a point of law.") (cited in **In re Roca**, 173 A.3d at 1187). Thus, our Supreme Court has emphasized that the doctrine of *stare decisis* is concerned with the stability of court pronouncements of law rather than the resolution of individual cases with different facts. **In re Roca**, 173 A.3d at 1187, 1191-92 & n.10 (concluding that judicial disciplinary sanctions imposed in prior cases do not have precedential value in subsequent cases).

In **Continental I**, this Court reversed the trial court's grant of summary judgment and found that there remained an issue of fact as to whether Vanadium had successor liability for the four Schneider Companies whose assets it had purchased. 810 A.2d at 135-36. However, our conclusion in

- 16 -

*Continental I* was based upon the record developed by the litigants in that earlier litigation. *Id.* at 135 (noting that this Court had "reviewed the[] disputed issues of fact in the context of the elements required [] to support a claim of successor liability"). Summary judgment is an inherently factual determination made on the record created by the parties in each individual case. Pa.R.Civ.P. 1035.2, 1035.3; *Risperdal Litigation*, 223 A.3d at 639. Thus, a trial court must weigh each summary judgment motion on "all facts of record" in that particular case, *Maas*, 234 A.3d at 436, and may not simply rely on the precedential value of an earlier summary judgment ruling based upon the unique record developed in that earlier case.

In addition to the fact that *Continental I* was decided on a different factual record, there is another factor that distinguishes the earlier case from the present litigation: the business activities of Decedent's employers, Schneider, Inc. and Pittsburgh Mechanical, were not at issue in the *Continental* litigation. Rather, *Continental* related to Vanadium's alleged successor liability arising out of its subsidiaries' purchases of the assets of Schneider Engineers, SSI, Jones-Krall, and CRS, companies that never employed Decedent and never engaged in the line of business in which Decedent was engaged. Except to the extent Vanadium purchased the assets of Schneider, Inc.'s two subsidiaries, Jones-Krall and SSI, Vanadium did not contract with or have any involvement with Schneider, Inc. or Pittsburgh Mechanical. Nor did Vanadium attempt to continue Schneider, Inc. and Pittsburgh Mechanical's plumbing and mechanical contracting work.

Accordingly, in light of the distinct record and factual predicate in the earlier **Continental** case, we conclude that the trial court did not err in refusing to give precedential effect to **Continental I**.[9]

Plaintiff next argues that the trial court abused its discretion in not considering Frank Schneider's deposition taken during the **Continental** litigation, which Plaintiff included in her response to Vanadium's summary judgment motion. **See** Response, Exhibit A. In declining to consider Frank's deposition, the trial court concluded that even though he was deceased and unavailable to be deposed in the present matter, it would be inappropriate to consider the earlier deposition because it was hearsay and "Vanadium did not have the same motive to develop [Frank's] testimony" in the earlier case. Trial Court Opinion, 5/28/21, at 9. The trial court explained that in **Continental**, "the parties did not distinguish between claims that lie against Vanadium's successor entities as a result of business continuation, as opposed to [the] broader claims [at issue here] that stem[] from the prior activity of an entity that did not continue to operate as a Vanadium company." **Id.** at

---

[9] Plaintiff has not raised the issue of whether Vanadium is collaterally estopped from challenging successor liability as a result of this Court's ruling in **Continental I**. However, even if properly raised, we would find the doctrine of collateral estoppel inapplicable. Collateral estoppel precludes a party from relitigating an issue addressed in a previous matter but only if "the issue decided in the prior case is identical to [the] one presented in the later case." **Weissberger v. Myers**, 90 A.3d 730, 733 (Pa. Super. 2014) (citation omitted). As we have explained in this decision, the issue of successor liability in **Continental I** involves distinct facts as compared to the successor liability analysis in the present matter.

9-10. The court stated that, if successor liability as to Schneider, Inc. and Pittsburgh Mechanical had been at issue, it would have been "expected to see more detailed questioning about the maintenance of corporate formalities," testimony which was noticeably absent from the transcript excerpts attached to Plaintiff's opposition to the summary judgment motion. *Id.* at 10.

Plaintiff argues that the trial court's attempt to distinguish this action from **Continental** is unavailing as there is no legal authority "supporting the proposition that a finding of successor liability based on the mere continuation or *de facto* merger doctrines would somehow be different based on the type of claim asserted." Plaintiff's Brief at 23. "Whether an action brought against a purported corporate successor is in tort, as here, or in contract, as in [**Continental**], successor liability analysis is the same." *Id.* Plaintiff asserts that the successor liability issues are identical in **Continental** and here, and therefore Vanadium had the same motivation in examining Frank Schneider in both cases.

"The admissibility of evidence is a matter addressed to the sound discretion of the trial court and should not be overturned absent an abuse of discretion." **Kardos v. Armstrong Pumps, Inc.**, 222 A.3d 393, 401 (Pa. Super. 2019) (citation omitted). The Pennsylvania Rules of Civil Procedure permit a non-movant to use hearsay in opposition to a summary judgment motion so long as the non-movant can demonstrate to the trial court "a plausible avenue for the admission at trial of the hearsay." *Id.* at 402.

Frank Schneider's **Continental** deposition, which Plaintiff offered to substantively rebut Vanadium's summary judgment motion, is undoubtedly hearsay. **See** Pa.R.E. 801(c) (defining hearsay as a statement offered to prove the truth of the matter asserted that a declarant "does not make while testifying at the current trial or hearing"); **Bugosh v. Allen Refractories Co.**, 932 A.2d 901, 911-12 (Pa. Super. 2007) (deposition of deceased deponent in earlier lawsuit is hearsay). Pennsylvania Rule of Evidence 804(b)(1) provides an exception to the rule against hearsay for former testimony, including deposition testimony, by an unavailable declarant that "is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Pa.R.E. 804(b)(1); **see also** Pa.R.Civ.P. 4020(a) (providing for admission of deposition testimony at trial against party who was present or represented at the taking of deposition "so far as admissible under the rules of evidence"). As Frank Schneider was deceased at the time the instant litigation commenced, he is clearly unavailable to testify in this case. Pa.R.E. 804(a)(4); **Bugosh**, 932 A.2d at 911. However, the question remains whether Vanadium had a "similar motive" to examine Frank in his **Continental** deposition. Pa.R.E. 804(b)(1).[10]

---

[10] Vanadium argues that, because the transcript of Frank Schneider's **Continental** deposition reproduced in Plaintiff's summary judgment opposition was partial and did not show the attorneys present at the deposition, there is no evidence that it had the "opportunity" to examine Frank
*(Footnote Continued Next Page)*

Plaintiff cited to three separate portions of Frank Schneider's deposition in her response to Vanadium's summary judgment motion. Two of the three relevant portions of Frank's testimony concern his loan to Matthew to fund his investment in Vanadium and Frank's employment with Vanadium after the 1990 asset purchase, matters as to which there is no substantial factual disagreement between the parties. **Compare** Response at 7-10; **id.**, Exhibit A (Frank Schneider Deposition) at 123-27, 130-31 **with** Motion, Exhibit 16, at 30-32, 68-69, 81, 106-10. As to the remaining issue, Plaintiff highlights Frank's testimony that Schneider Inc. did not publish annual reports and that none of the Schneider Companies held regular board meetings, which Plaintiff points to as evidence showing that all of the Schneider Companies "operated as a single entity." Response at 2; **id.**, Exhibit A, at 177; **see also** Plaintiff's Brief at 7.

We conclude that the trial court did not abuse its discretion in not considering Frank Schneider's testimony regarding the Schneider Companies' lack of adherence to corporate formalities. The issue in the **Continental** litigation was whether Vanadium had any successor liability for the Schneider Companies arising from its purchase of the assets of Schneider Engineers, SSI, Jones-Krall, and CRS and Vanadium's continuation of those businesses following the purchase. The issue of Schneider, Inc.'s internal corporate

---

in the earlier matter. We assume for the purpose of this decision that Vanadium, which was a party to the **Continental** case and Frank's employer at the time he was deposed, received adequate notice of the deposition.

operations was at best tangential to the core issues in **Continental** and not necessary for proof of Vanadium's successor liability in that case. Therefore, Vanadium lacked a "similar motive" to develop Frank's testimony on this issue, and the court properly concluded that his statements may not be admitted through the former testimony hearsay exception. Pa.R.E. 804(b)(1); **see** **Bugosh**, 932 A.2d at 912 (affirming decision to prohibit the introduction of hearsay deposition testimony from prior case where party had no incentive to cross-examine witness concerning liability issues in present case).[11]

More to the point, however, we agree with the trial court that even if Frank Schneider's deposition testimony were considered, the record still lacks sufficient evidence to show a triable issue of fact as to Vanadium's successor liability. **See** Trial Court Opinion, 5/28/21, at 10. It is undisputed that

_____

[11] Vanadium also argues that the Frank Schneider deposition should not be considered because Plaintiff only attached selected portions of the transcript; Plaintiff did not provide a copy of the full transcript in discovery; Vanadium does not have access to the transcript otherwise; and Vanadium is entitled to receipt of the entire transcript prior to its use at trial. **See** Pa.R.Civ.P. 4020(a)(4) ("If only part of a deposition is offered in evidence [at trial] by a party, any other party may require the offering party to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."); **see also** Pa.R.E. 106. We agree with Vanadium that Plaintiff's apparent use of selected portions of the deposition transcript without providing the remainder of Frank Schneider's testimony is concerning as Frank may have discussed the relevant matters in more depth or even contradicted the statements quoted by Plaintiff at other points during his deposition. **See** Pa.R.E. 106, Comment ("The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context."). However, the trial court did not rule on this issue below, and the appellate record does not allow us to resolve the factual question of whether Vanadium was or was not provided a copy of the full transcript.

Decedent worked on jobs for Schneider, Inc. and Pittsburgh Mechanical as a union steamfitter performing functions in its plumbing/mechanical contracting business line. It is further undisputed that Decedent never worked for Vanadium and that Vanadium never purchased the plumbing and mechanical contracting business of Schneider, Inc. or Pittsburgh Mechanical.

In 1990, Vanadium did purchase the assets of Schneider Engineers, SSI, Jones-Krall, and CRS, four of the approximately forty businesses founded by Frank Schneider. However, these four companies were engaged in engineering design, facility and property management services, electrical contracting, and equipment rental—distinct lines of business from the plumbing and mechanical contracting work of Schneider, Inc. and Pittsburgh Mechanical in which Decedent was engaged. Furthermore, Vanadium did not acquire the debts or liabilities of Schneider Engineers, SSI, Jones-Krall, CRS, or of any other of the Schneider Companies.

With respect to the question of whether Schneider, Inc. and Pittsburgh Mechanical effectively merged into Vanadium, the trial court accurately determined that none of the four elements of the *de facto* merger analysis were met here. As to the first element, there was no "continuity of ownership" between Vanadium and Schneider, Inc. or its subsidiary Pittsburgh Mechanical as Schneider, Inc. was owned by Frank and Edward Schneider. ***Fizzano Brothers***, 42 A.3d at 962 (citation omitted). Neither of these individuals became owners of Vanadium. Matthew Schneider, who did invest in

Vanadium, had no ownership interest or role at Schneider, Inc. or Pittsburgh Mechanical.

Second, Schneider, Inc. and Pittsburgh Mechanical did not "ce[ase their] ordinary business and dissol[ve] as soon as practically and legally possible" following Vanadium's purchase of the assets of the unrelated Schneider Companies. *Id.* (citation omitted). Rather, the record reveals that Schneider, Inc. has not dissolved and remains an active corporation as of the date of the present litigation.[12]

Third, Vanadium did not assume the "liabilities [of Schneider, Inc. and Pittsburgh Mechanical] ordinarily necessary for the uninterrupted continuation of the business" of those two companies. *Id.* (citation omitted). Indeed, Vanadium did not assume the liabilities of the four Schneider Companies whose assets it purchased, let alone the liabilities of Schneider, Inc. and Pittsburgh Mechanical.

Finally, there is virtually no evidence to show "a continuity of management, personnel, physical location, aspects, and general business operation" between Schneider, Inc./Pittsburgh Mechanical and Vanadium. *Id.* (citation omitted). Vanadium was formed by management at Schneider Engineers, SSI, Jones-Krall, and CRS, none of whom were shown to have any role at Schneider, Inc. or Pittsburgh Mechanical. While Vanadium brought over as many as 1,000 employees from Schneider Engineers, SSI, Jones-Krall,

---

[12] The record is silent regarding the fate of Pittsburgh Mechanical.

and CRS, there is no evidence that any of them had worked at Schneider, Inc. or Pittsburgh Mechanical, aside from Frank Schneider. Motion, Exhibit 16, at 89, 108. Vanadium and its subsidiary businesses also never occupied any of the office locations of Schneider, Inc. and Pittsburgh Mechanical in Pittsburgh and Carnegie, Pennsylvania. *Id.*, Exhibit 15, Exhibit 16 at 119-23. Furthermore, Vanadium and its subsidiaries pursued distinct lines of business as compared to Schneider, Inc. and Pittsburgh Mechanical.

Just as the "*de facto* merger" test was not met, the summary judgment record also fails to reveal sufficient evidence to support a claim of Vanadium's successor liability under the "mere continuation" exception. As explained above, the "mere continuation" analysis is very similar to that of the "*de facto* merger" exception and focusses on whether "a new corporation is formed to acquire the assets of an extant corporation" with the predecessor then ceasing to exist, leaving "in effect but one corporation." ***Fizzano Brothers***, 42 A.3d at 963 n.13; ***Lavelle***, 555 A.2d at 227 (citation omitted). "The primary elements of the continuation exception are identity of the officers, directors, or shareholders, and the existence of a single corporation following the transfer." ***Continental I***, 810 A.2d at 134-35.

Rather than Vanadium being a continuation of Schneider, Inc. and Pittsburgh Mechanical, the record reveals a quite different picture. Schneider, Inc. and Pittsburgh Mechanical had no common officers, directors, or shareholders with Vanadium or its subsidiaries that absorbed the assets of Schneider Engineers, SSI, Jones-Krall, and CRS. Furthermore, there is no

evidence that Schneider, Inc. or Pittsburgh Mechanical ceased to exist after the 1990 asset purchase and the only evidence submitted by the parties indicates that Schneider, Inc. remains an active corporation to this day. The record thus shows that Vanadium was solely a continuation of Schneider Engineers, SSI, Jones-Krall, and CRS and not of Schneider, Inc. or Pittsburgh Mechanical.

In arguing that there was a triable issue of fact regarding Vanadium's successor liability for Schneider, Inc. and Pittsburgh Mechanical, Plaintiff stresses two factors: Matthew Schneider's investment of over $2 million in Vanadium with funds borrowed from his parents and the purported intermingling of operations among the various Schneider Companies. As the trial court aptly surmised, however, "the source of funds to purchase assets is not part of the test for *de facto* merger/mere continuation." Trial Court Opinion, 5/28/21, at 8. Nothing in the record reflects anything other than that Matthew's loan from his parents was an arm's length's transaction, which Matthew repaid with interest according to the terms of the loan. Response, Exhibit A at 125-26; Motion, Exhibit 16, at 106-07. While Plaintiff attempts to connect this loan to Frank Schneider's employment at Vanadium, there is no indication that Matthew ran Vanadium at the behest of his father or that Frank otherwise exerted control over Vanadium through his loan to Matthew.[13]

---

[13] We note that Plaintiff has not asserted the fraud exception to the general rule against successor liability by arguing that Matthew's investment in
*(Footnote Continued Next Page)*

Plaintiff also falls short of showing that Vanadium inherited the liabilities of Decedent's former employers, Schneider, Inc. and Pittsburgh Mechanical, based upon the Schneider Companies' purported failure to adhere to corporate formalities and intermingling of operations. Without saying as much, Plaintiff appears to be arguing that the trial court should have pierced the corporate veil of the various Schneider Companies and found that Frank Schneider operated the various constituent companies as a single business enterprise as to which Vanadium is the successor in liability. However, Plaintiff's complaint does not contain allegations that would substantiate a veil piercing claim. **See Lumax Industries, Inc. v. Aultman**, 669 A.2d 893, 895 (Pa. 1995) (providing that a plaintiff must "set out material, relevant, well-pleaded facts" to recover under a veil piercing theory). Instead, Plaintiff's arguments are largely based on references to the "Schneider Group" or simply "Schneider" even when the conduct at issue is attributable to specific Schneider Companies, eliding the distinction between the four companies whose assets Vanadium purchased—Schneider Engineers, SSI, Jones-Krall, and CRS—and Decedent's employers—Schneider, Inc. and Pittsburgh Mechanical. **See, e.g.**,

---

Vanadium was a sham transaction to create the appearance of a change of ownership of the Schneider Companies to avoid liabilities. **See Fizzano Brothers**, 42 A.3d at 954 n.2 (stating that fraud exception is met where "the transaction was fraudulently entered into to escape liability") (citation omitted). The record here plainly would not support a finding that the 1990 asset sale was fraudulent. **Cf. Continental I**, 810 A.2d at 136 n.6 (agreeing with trial court that Continental Insurance could not recover from Vanadium under the fraud exception to the rule against successor liability).

Plaintiff's Brief at 24; Response at 7; *see also* Trial Court Opinion, 5/28/21, at 10 ("Plaintiff's defense of the Motion for Summary Judgment cannot be based on the careless application of terms and labels.").

Furthermore, Plaintiff has failed to produce evidence to overcome the "strong presumption in Pennsylvania against piercing the corporate veil." *Mortimer v. McCool*, 255 A.3d 261, 268 (Pa. 2021) (quoting *Lumax*, 669 A.2d at 895). As our Supreme Court has explained, the "distribut[ion] of related businesses across multiple corporate entities to secure liability protection and legal advantage" is not by itself cause for piercing the corporate veil. *Id.* at 283. Instead, veil-piercing cases "typically involve truly egregious misconduct" where the corporate form is abused to such a degree that "adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice." *Id.* at 283, 287 (citation omitted). While the record here contains evidence that the Schneider Companies disregarded some corporate formalities, such as by not holding regular board meetings, and shared some overlapping officers and a 401(k) plan,[14] Plaintiff has fallen far short of showing "such unity of interest and ownership that the separate personalities of the [individual Schneider Companies] no longer exist[ed]." *Id.* at 286-87 (citation omitted).

---

[14] *See* Response, Exhibit A at 177, Exhibit H (Paul Fallert Deposition) at 12, 146-47.

Accordingly, we conclude that the trial court did not err in determining that the record lacked sufficient evidence of facts to make out a *prima facie* claim that Vanadium was liable under a theory of successor liability for the acts of Decedent's former employers, Schneider, Inc. and Pittsburgh Mechanical. Pa.R.Civ.P. 1035.2; *Cigna*, 111 A.3d at 210-11. We therefore affirm the order granting summary judgment in favor of Vanadium

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/26/2022