J-A24019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JASON MATTHEWS AND ION | : | No. 534 EDA 2022 |
| CONSTRUCTION INC | : | |

Appeal from the Order Entered September 13, 2021
In the Court of Common Pleas of Bucks County
Civil Division at No(s):  2019-05936

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED JANUARY 25, 2023**

Erie Insurance Exchange appeals from the order denying its motion for summary judgment against Jason Matthews and Ion Construction Inc. Erie contends that the change in company name from Ion Construction LLC to Ion Construction, Inc. on an insurance policy does not create a second policy, requiring the need for a new form rejecting underinsured motorist ("UIM") coverage. We reverse and direct that summary judgment be entered in favor of Erie.

On February 9, 2015, Alexander Matthews obtained an insurance policy from Erie for a 2003 Chevrolet Avalanche. The named insured on the policy was listed as "Ion Construction LLC."  Alexander was the vice president, and his father, Jason Matthews, was the president of Ion Construction LLC.

Relevantly, on behalf of Ion Construction LLC, Alexander rejected UIM and uninsured motorist ("UM") coverage.

Ion Construction LLC subsequently changed its name to Ion Construction, Inc. Alexander was listed as the sole owner and corporate officer of Ion Construction, Inc., and Jason was listed as an officer. In February 2016, Erie issued an amended declarations page reflecting the name change of the company from Ion Construction LLC to Ion Construction, Inc., and renewed the policy without any coverage changes.

On April 15, 2017, Jason was driving the 2003 Chevrolet Avalanche in Philadelphia, when he was rear ended and allegedly sustained injuries to his neck and back. Subsequently, Jason made a claim for UIM coverage from Erie under the policy. Erie denied the claim, noting that there was no UIM coverage included in the policy, and that between the date of issuance and the date of the subject accident that gave rise to this litigation, there were no paid premiums for UIM benefits. In response, Jason argued that he is entitled to UIM coverage because no agent or officer of Ion Construction, Inc. rejected UIM coverage after formation of the corporation. To that end, Jason claims that Erie was required to obtain a newly signed UIM rejection form after the policy was amended to reflect the name change.

Erie filed a complaint for declaratory judgment, followed by an amended complaint, seeking a determination that no UIM benefits are available under the policy. After the parties conducted discovery, which included depositions

of Jason and Alexander, Erie filed a motion for summary judgment. The trial court denied the motion, finding that when Ion Construction LLC changed its name to Ion Construction, Inc., and Erie changed the name on the policy, a second policy was created which did not include a proper UIM rejection form, and, therefore, there is a genuine issue of material fact as to whether the UIM coverage was waived. The trial court also denied summary judgment because depositions of any persons affiliated with Erie had not been conducted.

Erie filed an application to amend the order to include the language to certify the order for interlocutory appeal. The trial court failed to act on the application, and it was deemed denied as a matter of law. Erie filed a petition for review with this Court, which granted the petition and certified this case for interlocutory appeal.

On appeal, Erie raises the following questions for our review:

1. Whether the trial court erred in denying [Erie's] motion for summary judgment by finding that a 75 Pa.C.S. § 1731 statutorily prescribed uninsured/underinsured rejection waiver obtained on a commercial insurance policy at inception did not validly reject uninsured/underinsured benefits for the life of the policy solely by virtue of the named insured entity on the policy changing its corporate structure and/or name subsequent to waiver execution?

2. Whether the trial court erred in denying [Erie's] motion for summary judgment by finding that a change to the named insured entity's corporate structure created a de facto "new" insurance policy that in turn required a second set of statutorily prescribed uninsured/underinsured rejection waivers to comply with the requirements of 75 Pa.C.S. § 1731?

Appellant's Brief at 4.[1]

> Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Under our Rules of Civil Procedure, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, the trial court may only grant summary judgment where the right to such judgment is clear and free from all doubt.

*Smith v. A.O. Smith Corp.*, 270 A.3d 1185, 1191-92 (Pa. Super. 2022) (citations, brackets, quotation marks, and paragraph breaks omitted). "[T]he issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the trial court." *Id.* at 1192 (citation and brackets omitted).

We will address Erie's arguments together. Erie contends that the trial court erred as a matter of law by denying its motion for summary judgment. *See* Appellant's Brief at 43. Noting that 75 Pa.C.S.A. § 1731 governs the rejection of UM/UIM benefits for personal and commercial policies, Erie asserts that UIM rejection waivers remain valid for the life of the policy unless

---

[1] Neither Jason nor Ion Construction, Inc. has filed a brief in this case.

affirmatively changed. ***See id.*** at 11-21; ***see also id.*** at 20-21, 33-34 (alleging that if a valid "Important Notice Form" is secured, as here, alongside a UIM/UM rejection waiver, the insured is presumed to know the benefits and limits available under the policy and no other notice or rejection is required). Erie maintains that the trial court's decision is not supported by case law or the statutory language, noting that once the policy includes a UM/UIM rejection waiver, the named insured must request a change in UM/UIM coverage on the policy, even if a new vehicle or a new named insured is added to the policy. ***See id.*** at 25-32.

Erie claims that the change in the corporate name from "Ion Construction LLC" to "Ion Construction, Inc." did not trigger a responsibility to obtain a second UIM rejection waiver, emphasizing that the change in name did not create a new corporation, and did not create a new policy or have any bearing the validity of the initial UIM rejection, which was still enforceable. ***See id.*** at 11, 21, 25-26, 28, 32-39; ***see also id.*** at 35-39 (noting that policy number, coverage, and premiums remained the same on the policy). Erie highlights that during their deposition, Alexander and Jason admitted that Ion Construction, Inc. was formed for tax purposes; the Ion Construction name was kept because of the familiarity to its client base; and the incorporated company did the same work as the LLC. ***See id.*** at 22-25; ***see also id.*** 33-34 (arguing that Ion Construction, Inc. was wholly owned by the same person, Alexander, who executed the UIM rejection waiver when the company was

known as Ion Construction, LLC, and therefore had an actual understanding and notice of the rejection of such benefits). Erie maintains that there is no continuing obligation on the insurance company to obtain new UM/UIM rejection forms when the name on the policy changes. *See id.* at 30. Finally, Erie argues that further depositions were unnecessary because the sole issue was one of a legal nature and could be resolved with the policy and the depositions already conducted, as this Court must resolve whether the UIM rejection form complies with Section 1731. *See id.* at 39-43.

> It is well settled in this Commonwealth that in interpreting an automobile insurance policy, a court must view the policy in its entirety, giving effect to all of its provisions. An insurance policy must be read as a whole, and not in discrete units. The interpretation of an insurance policy presents a pure question of law, over which our standard of review is *de novo*.

*Hartford Fire Ins. Co. v. Davis*, 275 A.3d 507, 511-12 (Pa. Super. 2022) (citations, quotation marks, and brackets omitted).

Section 1731 of the Pennsylvania Motor Vehicle Fiscal Responsibility Law ("MVFRL") governs UIM and UM coverage. *See* 75 Pa.C.S.A. § 1731. The MVFRL mandates that insurers offer UIM coverage to insureds; nevertheless, such coverage is optional. *See id.* § 1731(a) (stating that UIM and UM coverage must be included in any insurance policy and that the purchase of such coverage is optional). "Section 1731 provides that the insured must be provided with specific information to explain the separate purposes of U[M]/UIM coverage and must sign written rejection forms with certain stated language in prominent type and location in order to knowingly and voluntarily

reject each type of coverage." ***Koch v. Progressive Direct Ins. Co.***, 280 A.3d 1060, 1066 (Pa. Super. 2022) (citing 75 Pa.C.S.A. § 1731(b), (c)). Further, under Section 1731(c), an insured's "affirmative decision to waive UIM coverage is presumed to be in effect throughout the lifetime of that policy until 'affirmatively changed' by the insured." ***Koch***, 280 A.3d at 1067 (citation omitted); ***see also*** 75 Pa.C.S.A. § 1791 (stating that it is presumed "that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required[.]").

Here, on February 9, 2015, Alexander signed a valid rejection of both UIM and UM coverage for the 2003 Chevrolet Avalanche on behalf of Ion Construction LLC. ***See*** Rejection of UIM Protection, 2/9/15; ***see also*** Important Notice, 2/9/15 (providing notice to Alexander that he could purchase UIM coverage). The Erie policy also advised that it contained no protection for "damages caused by underinsured motorist." ***See*** Policy (Q020930685), 2/9/15, at 2 (unnumbered). During his deposition, Alexander confirmed that he had signed the rejection of UIM coverage. ***See*** N.T., 11/18/20, at 29.

Alexander testified that the corporation's name was changed from Ion Construction LLC to Ion Construction, Inc. for tax and liability purposes on the advice of their accountant. ***See id.*** at 40; ***see also*** N.T., 12/16/20, at 88-89

(wherein Jason confirmed that the company changed its name for tax purposes). Alexander confirmed that the company's work stayed the same after the name change. *See* N.T., 11/18/20, at 41. Subsequently, Erie issued an amended declarations on the policy, reflecting the company's name change. *See* Amended Declaration (#Q020930685), 2/9/16. The amended declarations did not include any UIM or UM benefits and specifically stated that there was no change in the premiums. *See id.* Jason further admitted that after the name change of the corporation, the policy on the vehicle in question was not cancelled and they kept paying the premiums. *See* N.T., 12/16/20, at 109.

The trial court found that the corporate name change on the policy constitutes a new policy, which required Erie to obtain a new UIM rejection form from Ion Construction, Inc. *See* Trial Court Opinion, 3/30/22, at 5 (finding that two "policies were created, one for Ion Construction, LLC and one for Ion Construction, Inc. As such, although Ion Construction, LLC was offered and validly waived UIM coverage, Ion Construction, Inc. was not offered a rejection of UIM form pursuant to 75 Pa.C.S.[A.] § 1731(c) and could not have validly waived UIM coverage."). However, the trial court's conclusion ignores the language of section 1791 that states once notice of available coverages and the rejection of those coverages has been given, that decision carries forward until affirmatively changed. Indeed, while not expressly addressing the name change of the insured on a policy, this Court has previously held

that a new request regarding coverage limits or the adding of a named insured to a policy does not equate to the creation of a new policy and subsequent requirement for the insurer to provide new UIM/UM rejection forms. ***See, e.g., Koch***, 280 A.3d at 1068-69 (concluding that insured's execution of valid UIM benefits upon delivery of the original policy was still in effect despite insured's later request for more coverage on the policy); ***Smith v. Hartford Ins. Co.***, 849 A.2d 277, 281 (Pa. Super. 2004) (concluding that insurer was not required to provide a new UIM rejection form when insured sought to increase the liability coverage on the existing policy, where he had previously rejected the UIM benefits at the inception of the policy); ***Kimball v. Cigna Ins. Co.***, 660 A.2d 1386, 1388-89 (Pa. Super. 1995) (concluding that daughter was bound by mother's prior reduction of benefits when the daughter's name was added to the policy, noting that the endorsement amending the policy to add daughter's name clearly provided the lower benefits). We see little difference in being able to change liability limits or adding a named insured and a corporation's nominal name change on the policy, and the insurer's continuing ability to utilize a prior properly executed UIM coverage rejection form.

Here, Alexander executed a valid rejection of UIM coverage on behalf of Ion Construction LLC in February 2015. The mere change from Ion Construction LLC to Ion Construction, Inc. did not create a new entity, nor does it affect the corporation's property, rights or liabilities. ***See Smith***, 270 A.3d at 1193 ("There is in effect but one corporation which merely changes

its form and ordinarily ceases to exist upon the creation of the new corporation which is its successor." (citation omitted)); **see also** 18A Am. Jur. 2d Corporations § 234 "(An authorized change in the name of a corporation has no more effect on its identity as a corporation than a change of name of a natural person has upon his or her identity; the corporation's identity remains unchanged. A corporate name change does not make a new corporation but only gives the corporation a new name." (footnotes omitted)); 18 C.J.S. Corporations § 143 ("In general, a change in the corporate name does not affect the identity, rights, or liabilities of the corporation. … The corporation continues, as before, responsible in its new name for all debts or other liabilities which it had previously contracted or incurred." (footnote omitted)). Indeed, Alexander admitted that the change from Ion Construction LLC to Ion Construction, Inc. was done for tax purposes and the new company did the same work as the old company. **See** N.T., 11/18/20, at 41; **see also** 18A Am. Jur. 2d Corporations § 223 ("A change in a corporation's name does not establish a new corporation when the evidence shows that the name change did not alter the identity of the corporate entity.").

Moreover, the Amended Declaration, which reflected the changed name of the insured, included the same insurance policy number and explicitly did not include UIM or UM benefits. Importantly, after the corporate name change, Ion Construction, Inc. continued to enjoy the savings on the premiums by rejecting the UIM coverage and allowing coverage now would be awarding the

corporation's inaction in adding such coverage. *See **Kimball v. Cigna Ins. Co.***, 660 A.2d 1386, 1389 (Pa. Super. 1995) (finding a UM/UIM sign-down form valid where "the plaintiff accepted the policy with the lower limits without complaint and permitted payment of the lower premium without incident."). Significantly, as further support that the policy did not include UM/UIM benefits at the time of the accident in April 2017, on October 4, 2017, Erie issued an Amended Disclosure, which indicated that Ion Construction, Inc., had added UM/UIM benefits.

Accordingly, once Alexander properly rejected the UIM coverage on behalf of Ion Construction LLC, it applied to Ion Construction, Inc., despite the name change on the policy after the rejection form had been executed. *See generally Koch*, 280 A.3d at 1066-67 (noting that change in insurance company's name did not result in the creation of a new company and the insured's policy remained the same); ***Breuninger v. Pennland Ins. Co.***, 675 A.2d 353, 358-59 (Pa. Super. 1996) (holding that the transfer of a motor vehicle insurance policy from one company to another did not constitute a new policy, as the policy number, coverage, and premium stayed the same throughout the life of the policy). Therefore, under the facts of this case, the policy did not include UIM coverage at the time of the accident, and Jason was not entitled to UIM benefits. Accordingly, we reverse the trial court's denial of summary judgment in favor of Erie and remand with direction to enter summary judgment in favor of Erie on its declaratory judgment claim.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2023